E950akss                          Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                            11 CR 93

5   CETIN AKSU,

6              Defendant.

7   ------------------------------x

8                                       New York, N.Y.
                                        September 5, 2014
9                                       12:01 p.m.

10

11

    Before:
12
                         HON. JED S. RAKOFF,
13
                                        District Judge
14

15                           APPEARANCES

16  PREET BHARARA
         United States Attorney for the
17       Southern District of New York
    BENJAMIN NAFTALIS
18  ALEX ROSS MILLER
    Assistant United States Attorney
19
    LAW OFFICES OF LAWRENCE D. GERZOG
20  BY:  Lawrence D. Gerzog
    Attorneys for Defendant
21

22  Present:  Special Agent Paul Larson, DEA

23            Turkish Language Interpreter

24

25

E950akss                        Sentence

```
1                (In open court; defendant present)

2                THE DEPUTY CLERK:  This is September 15, 2014.

3                Please bring the defendant to counsel table.

4                This is United States v. Cetin Aksu, docket number 11

5      CR 93, defendant number 3.

6                Will everyone please be seated.  And will the parties

7      please identify themselves for the record.

8                MR. NAFTALIS:  Good morning, your Honor.  Ben Naftalis

9      for the government, joined by Assistant United Attorney Alex

10     Ross Miller who joined the office this week.  And Special Agent

11     Paul Larson, with the DEA.

12               THE COURT:  You joined the office this week?

13               MR. MILLER:  Yes, sir.

14               THE COURT:  So what do you need these two guys for?

15               MR. MILLER:  Helping me along, your Honor.

16               THE COURT:  Welcome aboard.

17               MR. MILLER:  Thank you.

18               MR. GERZOG:  Judge, I'm Lawrence Gerzog.  I represent

19     Cetin Aksu, seated to my right.

20               THE COURT:  The gentleman to his right?

21               THE INTERPRETER:  Good morning, your Honor, Turkish

22     interpreter.

23               MR. GERZOG:  And may I introduce the Court to the Vice

24     Consul of Turkey, here in New York.

25               THE COURT:  Good morning.  I should say good
```

afternoon.  And I apologize for the delay.  I had other matters

which came up.

       So, I'm very anxious to hear from counsel, although I

have received submissions.  Because I think this is a difficult

sentence.

       To get some of the preliminaries out of the way, I

take it both sides are agreeing that the offense level is 43,

the criminal history category is 1, and the guideline range,

which is not binding on the Court but which the Court must

consider, is life imprisonment.  Although, not all the counts

carry up to life.  Count one carries 10 years to life;

count two, though, only carries up to 15 years; count three

carries 25 years to life; and count four covers only up to five

years.

       Everyone in agreement with the guideline calculation?

       MR. GERZOG:  Your Honor, I believe you said it is

criminal history category I.  I believe, by operation of the

guidelines because of the second count, it is criminal history

category VI, actually.  But it doesn't impact the guideline.

       THE COURT:  Yes, I think that's right.

       MR. NAFTALIS:  Yes, your Honor.

       THE COURT:  So it's a serious error, then, in the

presentence report, which we'll need to get corrected.  But I

agree it is VI.

       All right.  But the government has indicated its

E950akss                              Sentence

1  intention to move for a downward departure and nonguidelines

2  sentence for substantial assistance.

3          Does the government so move?

4          MR. NAFTALIS:  It does, your Honor.

5          THE COURT:  And that motion is granted.

6          So here's the real issue.

7          Oh, I should mention the probation office recommends

8  and a three-year sentence.

9          The crimes that the defendant committed were obviously

10 very serious crimes.  Absent cooperation, this Court would have

11 certainly considered a sentence of many decades, if not life.

12 And I think there was a 25 year mandatory minimum.

13         On the other hand, his cooperation was certainly very

14 substantial.  And under arduous circumstances.  So he certainly

15 deserves a sentence that gives him substantial credit for that

16 very substantial cooperation.  So it's not going to be 25

17 years.  It will be less than that.  It will certainly be much

18 less than life.  It is certainly not going to be zero.  Defense

19 counsel recognizes that and asks for a three-year sentence.

20         But where, in between 0 and 25 this sentence should be

21 is, I think, a difficult issue.  So let me hear first from

22 defense counsel, then from government counsel, and then from

23 the defendant, if he wishes to be heard.

24         My law clerk corrects me.  I said the defendant

25 recommended three years.  As I say, defense counsel, but

E950akss                        Sentence

1    probation recommended eight years.

2          Yes.

3          MR. GERZOG:  Your Honor, as you said, this is a very

4    unusual case.  And I certainly agree with the Court that the

5    crimes that Mr. Aksu stands convicted of are among the most

6    serious that a federal court has to deal with.

7          However, the reason I ask the Court for a three-year

8    sentence is, in addition to the fact that he cooperated, he

9    cooperated against dangerous people, he cooperated against

10   people who would have a motive to harm him when he gets back to

11   Turkey, is that his involvement in the crime did not come from

12   a desire to aid a terrorist organization.  He certainly --

13         THE COURT:  Yeah, he was more of a mercenary, to put

14   it, perhaps --

15         MR. GERZOG:  And even then, Judge, you know his --

16   what happened, as your Honor knows I'm sure from reading all of

17   the papers, Mr. Aksu had a trucking company in Turkey.  And it

18   was successful for a while.  And but then it went bankrupt.

19   And he attempted to defraud the bankruptcy process in Turkey by

20   selling assets of his trucking company to an underworld figure,

21   this Mr. Norgese.  He expected Mr. Norgese to pay him $300,000.

22   As you see from the papers, he owes that much and more to banks

23   in Turkey.  And what he was essentially trying to do, was get

24   out of debt in Turkey.

25         Mr. Norgese did not pay him the agreed-upon amount.

E950akss                    Sentence

1   And then Mr. Norgese suggested to Mr. Aksu that he become

2   involved in these matters, and that that might allow

3   Mr. Norgese to pay him the 300,000 he owed him and perhaps some

4   more.  But Mr. Aksu's motivation was not to get rich, not to

5   set his family up for life.  He was merely trying to pay back

6   the debts he owed.

7        Now, of course the way he chose to do that, even in

8   defrauding the bankruptcy process, was inappropriate.  And when

9   he got involved in this, he made that mistake much, much more

10  serious, which he understands, and which I understand.  But

11  when your Honor uses a word like mercenary, although that is

12  correct, I think of mercenary as someone who, you know, goes to

13  the highest bidder and is out to make a --

14        THE COURT:  Yeah, I agree.  It doesn't quite -- it is

15  not the perfect adjective.

16        MR. GERZOG:  And so, you know, although Mr. Aksu has

17  done something very wrong and is very remorseful about it, his

18  motivation was not to become part of the drug trade, not to

19  become part of the weapons trade.  He, himself, had no contacts

20  in either area.  He, himself, had no opportunity to obtain

21  drugs or weapons from anyone.

22        You know, as I said in my submission, you know,

23  because he wanted this money from Mr. Norgese, he found himself

24  as a fairly central character in this pot boiler of a

25  conspiracy.  And I can only imagine that, at times, he sort of

1    looked around and thought, what have I gotten myself into, you

2    know, what's going on here.  Given his background, he is just

3    not kind of person who you would expect to be going from city

4    to city and talking about $9 million worth of arms or

5    $2,000,000 worth and so forth and so on.

6            And if you look at the sentence that the Court gave

7    his co-defendant, Mr. Webbe, who I assume -- I have not

8    obviously seen Mr. Webbe's presentence report.  But since he

9    was convicted of the terror conspiracy, I assume his guidelines

10   were also quite high.  Your Honor gave him a five-year

11   sentence.  And Mr. Webbe is a Lebanese national who actually

12   has ties to Hezbollah.  And the intent was to get these arms

13   that were fictitious -- since this was a sting.  But his intent

14   was to get those weapons to Hezbollah.  And Mr. Aksu knew that

15   that was Mr. Webbe's intent.  And he didn't go home and say,

16   oh, no, I can't be involved in anything that has to do with

17   Hezbollah.  He didn't do that.  I understand that.  But he was

18   not trying to help Hezbollah.  He was simply trying to get the

19   money that Mr. Norgese owed him, so that he could perhaps

20   settle up his life in Turkey and get back on some kind of even

21   keel.  And so when you look at Mr. Webbe's five-year sentence,

22   most respectfully, that's why I thought it was appropriate to

23   ask for a three-year sentence.  Because Mr. Webbe did intend

24   that Hezbollah be the beneficiary.  Mr. Webbe is Lebanese and,

25   therefore, understands fully what Hezbollah is, and who's

1    Hezbollah, where Hezbollah's politics and tactics lie.

2            As I mentioned in my letter and as I have learned

3    during the course of this case, the news media in Turkey does

4    not report on Hezbollah the way it reports on Hezbollah here in

5    the United States.  Turkey is predominantly a Muslim country.

6    And while I wouldn't say they are supportive of Hezbollah, they

7    certainly don't report on Hezbollah's activities in such a way

8    that an average Turkish citizen would be expected to know that

9    Hezbollah is this very violent world-wide terror organization.

10           And I'm not saying that Mr. Aksu had no idea.  He did

11   know.  He was aware of who they were.  But he doesn't have, by

12   virtue of his ethnicity, by virtue of his education, by virtue

13   of his background, the kind of familiarity with Hezbollah that

14   obviously Mr. Webbe, who was Lebanese and who was seeking to

15   help Hezbollah.

16           And your Honor saw fit to give him a five-year

17   sentence.  And so that's what caused me to suggest a three-year

18   sentence.  And, other than that, all I can say is that as soon

19   as I came onto the case and explained things to Mr. Aksu, he

20   began to cooperate.  I didn't have to beat him up, as we say in

21   the trade.  You know, he was perfectly willing to do that.

22           THE COURT:  The record should reflect that counsel is

23   using that term metaphorically.

24           MR. GERZOG:  That's right, in air quotes.  And he was

25   eager to help.  And I think Mr. Naftalis' letter reflects the

E950akss                      Sentence

1   fact that the government benefited from his help.  And your

2   Honor heard his testimony at the trial of Mr. Henareh, so your

3   Honor is also aware of how important his cooperation was.

4            And I know Mr. Aksu does want to speak to the Court.

5            THE COURT:  And I want to hear from him.  But I want

6   to hear from the government first.  We'll come back to you.

7   Thank you very much.

8            MR. NAFTALIS:  Thank you, your Honor.

9            You know, of course, I'm not going to recommend a

10  sentence, your Honor.  But I do want to, you know, echo what

11  Mr. Gerzog was talking about in terms of just --

12           THE COURT:  Because the government never recommends a

13  sentence, except when it recommends a sentence.

14           MR. NAFTALIS:  Exactly.  It's only honored in the

15  breach, but paragraph 9 and 10, it does speak to the other

16  defendant's sentences.  Mr. Henareh, who went to trial, and

17  your Honor presided over that trial, was sentenced to

18  210 months.  And I frame that because he was -- he pled.  He

19  was convicted of the drug offense.  Mr. Webbe was convicted of

20  essentially the same offenses as Mr. Aksu, and was given five

21  years.  But Mr. Aksu and Mr. Henareh, while they are situated

22  differently factually in the conspiracy and the sting, Mr. Aksu

23  played a very different role, not only in the conspiracy but

24  also to the government.  Mr. Webbe did not testify.  He was

25  more aligned with, and directly connected with, the Hezbollah

E950akss                         Sentence

1    end of this narcoterrorism conspiracy.  He was from Lebanon.

2    He directed to Hezbollah.  Mr. Aksu, on the other hand, is

3    Turkish.  He was a truck driver and, really, was providing the

4    middleman support.  But his role on the government was crucial.

5    And your Honor will remember this from the trial and also the

6    sentencing of Mr. Henareh, the key defense that the government

7    anticipated and then played out was that this was a whole

8    fiction.  That the DEA entrapped, not legally, but factually,

9    Mr. Henareh.  The drugs were fake.  And that was evidence of

10   the fact that this was all make believe.  The purity of the

11   drugs, the one sample was very low.  So no one really was into

12   this, and but for the DEA's involvement and going overseas,

13   everyone would have lived a happy, law-abiding life.

14           THE COURT:  So I think, though, I need to press you a

15   little bit --

16           MR. NAFTALIS:  Sure.

17           THE COURT:  -- on in terms of culpability -- and then

18   we'll turn to the assistance in a minute.  In terms of

19   culpability, who would you, in the balancing all of the

20   relevant areas, do you view as more culpable in this overall

21   conspiracy, Mr. Webbe or Mr. Aksu.

22           MR. NAFTALIS:  I think they are different.

23           THE COURT:  They are different.

24           MR. NAFTALIS:  But I think Mr. Webbe was more

25   culpable, for this reason.  There was an ideological -- Mr.

E950akss                         Sentence

Webbe was not aligned with Hezbollah, but knowingly, and

carelessly, and childishly, was a proponent of procuring the

arms for Hezbollah.

        Mr. Aksu, he was tasked with helping negotiate this

deal by Mr. Norgese in Turkey.  And I do have to disagree with

Mr. Gerzog about, you know, I think while Hezbollah can kind

of, especially in these times if you read the paper, can be

looked upon as a little bit more of a political group than a

terrorist group, I think all reasonable people would put them

kind of more to the right of the terrorist scale.  But Mr. Aksu

was not doing this for, really, for money, or for thrill as Mr.

Webbe was.  But was trying to get himself out of that kind of

bad business deal with Mr. Norgese.  He knew what he was doing.

Mr. Norgese  was kind of the mastermind of the drugs and the

transaction with Hezbollah.  That's not to excuse it, but he

was kind of more of the drug mule, when you think of it, right.

He knew what he was doing.  He was tasked by the drug

trafficker, here Mr. Norgese to kind of act on his behalf.  But

Mr. Webbe was kind of a different ilk.  He was meeting with

folks in Lebanon.  He was from Lebanon.  Very aware of what

Hezbollah was.  So --

        THE COURT:  All right.  Let me ask you, then, the

other question.

        MR. NAFTALIS:  Yeah.

        THE COURT:  Which is because I didn't see Mr. Webbe,

E950akss                          Sentence

1    as you know.

2              MR. NAFTALIS:  Sure.

3              THE COURT:  I didn't see his testimony.

4              Who gave, if you can, more substantial cooperation,

5    Mr. Webbe or Mr. Aksu.

6              MR. NAFTALIS:  Well, Mr. Aksu testified which, you

7    know, I'll come to that in a second.

8              Mr. Webbe gave the DEA great help, through his father,

9    as you recall.  He gave that third-party cooperation which led

10   to some great seizures.  He kind of began the snowball effect

11   which I think helped procure the assistance of Mr. Aksu.  But

12   Mr. Webbe never testified.  His cooperation was kind of fixed

13   from the moment he pled.

14             Mr. Aksu, while he initially fought pleading, did

15   plead.  And we wanted his cooperation because when Mr. Henareh

16   decided to go to trial, Mr. Webbe was an imperfect cooperator.

17   Mr. Webbe was not charged with the drugs, was not really at any

18   of the meetings that were central to the narcotics conspiracy,

19   both the 1 kilogram delivery with Mr. Henareh or the

20   189 kilograms that come with the culmination of the case when

21   everyone was arrested.  That was not part of Mr. Webbe.  Mr.

22   Webbe was in the Maldives when all of that was happening.

23             So Mr. Aksu -- and this is what I was beginning to say

24   before.  The government realized, and I think what the jury

25   took from Mr. Aksu, was he was able to put the color on the

realness of this conspiracy, both in terms of the drugs and,

had your Honor let it in, the connection between the drugs and

Hezbollah.

          Your Honor, we think we called Hezbollah an

international drug trafficking organization and left it at

that.  But had that come in, Mr. Aksu would have spoken to the

fact that this was for Hezbollah, the money was for Hezbollah

to buy weapons.  That he was tasked with doing this by Mr.

Norgese, knowing that Hezbollah was involved.  We never got

into that.  But without Mr. Aksu, we wouldn't have been able to

connect Mr. Norgese and the drug trafficking to the weapons

side of it.

          What came out at trial, of course, was just the drug

aspect of it.  And while a lot of this was recorded, and we had

several confidential sources and many agents testify, we only

had one witness that was able to say, I was in the room in

Turkey when the drug suppliers were making decisions.  I was

dispatched from Turkey to have these meetings.  The drugs were

intended to go to the United States.  The drugs were supposed

to be real.  And that was the theme of Mr. Henareh's counsel's

defense, was none of this was supposed to happen in New York,

it was all supposed to happen in Europe.  It was all fake.  The

drugs were impure.  My client was a doctor.  He was a sheep

herder who was ripped off unwittingly.  And Mr. Aksu was able

to stand up and say I was actually in meetings in Cypress, in

E950akss                        Sentence

```
 1   Malaysia, and Turkey, and we never were talking about medicinal
 2   remedies, we were talking about heroin and how to move it to
 3   the purchasers and, ultimately, to the United States.
 4            THE COURT:  All right.  Thank you very much.  That is
 5   very --
 6            MR. NAFTALIS:  That's really --
 7            THE COURT:  -- very helpful, yes.
 8            Before we go back to the defense, I'm delighted to
 9   have the gentleman from the Turkish consulate here.  I didn't
10   know whether he wanted to say anything or not.
11            MR. GERZOG:  I'll let him speak for himself.  I think
12   he is here primarily as an observer.
13            And let me just say, if either the Court or
14   Mr. Naftalis heard me to say that Hezbollah is an educational
15   organization or something like that, they are not --
16            THE COURT:  No, your point is your client may not have
17   been as fully aware of the scope of its activities as someone
18   in a place like Lebanon.  I don't think I need to make any
19   determination on where one way or the other about that.
20            MR. GERZOG:  Very well.  Thank you.
21            TURKISH VICE CONSUL:  Thank you, your Honor.  I have
22   no words to say.
23            THE COURT:  Okay, great.
24            So let me hear from the defendant if he wishes to be
25   heard.
```

E950akss                    Sentence

1              MR. GERZOG:  He does.

2              THE DEFENDANT:  I want to apologize with all my heart

3      to the United States, to this Court, to the prosecutors, and

4      especially to my family.

5              I have done something very wrong.  And I'm ashamed of

6      it.  I'm ashamed of my actions.  And ashamed that I have caused

7      so many people so much hardship.

8              I became involved with these crimes because my family

9      and I were in desperate financial difficulty.  I had no

10     intention or plan to become wealthy, but merely to pay off my

11     business debts.

12             I realize now, of course, that my family's financial

13     difficulty did not legally or morally entitle me to do what I

14     did.

15             I realize now that if the conspiracy I thought I was

16     part of had, in fact, been real, I would have caused great harm

17     to many, many innocent people.  Frankly, I'm glad the

18     conspiracy turned out to be the way it did, so that this great

19     harm was avoided.

20             I can promise you, your Honor, that I have learned a

21     very serious lesson from my involvement in this matter, and

22     that I will never, anywhere in the world, become involved in

23     criminal activity again.

24             THE COURT:  Thank you very much.

25             Well, I think there is both a macro and a micro aspect

E950akss                        Sentence

1    of this sentence.

2            The macro side, is that in cases of this kind, the

3    United States is totally dependent on people cooperating.  And

4    that is not an easy thing for folks to do.  The very extreme

5    nature of the crimes and the criminal persons who organize

6    those crimes, such as Hezbollah, makes it a very difficult

7    decision to cooperate.  And by this other side of that same

8    coin, means that very substantial credit has to be given for

9    cooperation in order to induce cooperation from people who

10   otherwise would be reluctant to do so.

11           The American system that is so dependent in cases of

12   this kind, and others, on cooperation, has often been

13   criticized in foreign lands, and otherwise, by people who don't

14   understand that the reason the United States has to offer

15   cooperation is because we don't undertake the more extreme

16   measures, arrests without probable cause, unlimited

17   wiretapping, physical threats by the government, and all of the

18   other things that some other countries sometimes undertake to

19   get the testimony that they need to prosecute these kinds of

20   cases.  And so, as a country ruled by law, the best we can

21   offer is cooperation.  And it would be a hollow offer if that

22   cooperation was not accompanied by very substantial benefits to

23   the cooperators.  So that's the macro side.

24           The micro side and, of course I have considered all of

25   the factors under Section 3553(a) in determining the sentence.

E950akss                    Sentence

1   But one of those factors is the comparison between the two

2   cooperators here, Mr. Webbe and Mr. Aksu.  And that's why it

3   was very important to me to hear from the government, a few

4   minutes ago, as to how the government basically evaluates that.

5   Because, while the Court gets to see part of the picture

6   through the trial and through the presentence reports, the

7   government has a more informed view from the entire

8   investigation.  And what the prosecutor has just said, is that

9   while Mr. Webbe was very important, particularly at the outset

10  in getting the, if you will, cooperation ball rolling, Mr.

11  Aksu's cooperation was, in the end, more critical.  And that

12  while neither Mr. Webbe nor Mr. Aksu can be viewed as having

13  committed other than the most serious crimes, Mr. Webbe's

14  culpability was, in some respects, greater.

15          So I think that that warrants a sentence below five

16  years, which is what I gave Mr. Webbe.

17          How long has Mr. Aksu served?

18          MR. GERZOG:  Your Honor, he has been in prison in the

19  United States for two years and 9 months.  He was in prison in

20  Romania, which I understand that wouldn't count for four

21  months.  So, in total, he has been in prison for a little over

22  three years.  But as far as his United States time already

23  served, he has served approximately two years 9 months.

24          MR. NAFTALIS:  He was arrested in Romania in July of

25  2011.  So in counting his preextradition time, since July of

1  2011.

2          THE COURT:  Well, the reason I ask this is the

3  sentence I was thinking about before hearing from counsel was

4  somewhere between four and five years.  And I'm convinced, now,

5  it should be less than five years.  But the portion that he

6  served in Romania will not be relevant.  It's relevant for him,

7  obviously, and it's relevant in the broader picture.  But it's

8  not relevant from the standpoint of the sentence I will now

9  impose.  It won't be given as credit.  But the portion he has

10  served in the United States will be.  So I think, though,

11  taking account of the Romanian portion, I think I will adopt

12  the defense counsel's recommendation.

13          So the sentence of the Court is that the defendant is

14  sentenced to three years, 36 months in prison, concurrent on

15  each of the four counts.  No supervised release will be

16  imposed, because it is obvious he will be deported at the

17  completion of his term.

18          Also, there is no point in imposing a fine, given his

19  financial circumstances.

20          There is a mandatory special assessment of $400 that

21  must be paid.

22          There is a forfeiture of $1,750,000.  Did the

23  government bring a forfeiture order, or has that already been

24  entered, I can't remember.

25          MR. NAFTALIS:  We already submitted it to your Honor.

E950akss                        Sentence

```
 1    I believe it has already been signed.

 2              THE COURT:  Okay.

 3              MR. NAFTALIS:  It's on the docket.

 4              THE COURT:  All right.  Is there anything else we need

 5    to take up before I advise the defendant with respect to

 6    appeal.

 7              MR. GERZOG:  No, your Honor.

 8              MR. NAFTALIS:  Only, your Honor, that I think you did

 9    it at the beginning, that you adopt the PSR.  And then you made

10    the factual --

11              THE COURT:  Yeah, I'll sent to the probation office

12    and ask them to amend the PSR to make sure that it is criminal

13    history category VI, not the typographical error that appears

14    on page 18 where it is just listed as one.

15              So, was there a waiver of appeal in this case?

16              MR. NAFTALIS:  No, your Honor.

17              THE COURT:  Okay.  So, Mr. Aksu, you have a right to

18    appeal the sentence.  To be frank, I would then have to

19    reevaluate your mental capability.  But you have a right to

20    appeal the sentence.  Do you understand that?

21              THE DEFENDANT:  Yes.  Thank you.

22              THE COURT:  And if you can't afford counsel for the

23    appeal, the Court will appoint one for you free of charge.

24              Do you understand that?

25              THE DEFENDANT:  Yes.
```

E950akss                          Sentence

1          THE COURT:  Very good.  Thanks very much.

2          MR. NAFTALIS:  Only one other matter, your Honor.

3          I believe there is an open indictment and the

4   government moves to dismiss it.

5          THE COURT:  Yes.  That motion is granted.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25